UNITED STATES of America,
Plaintiff-Appellee,

v.

Evelio MOTA and Juan Flores,
Defendants-Appellants.

No. 78–5421.

United States Court of Appeals,
Fifth Circuit.

July 16, 1979.

Steven Kreisberg, Asst. Federal Public Defender, Miami, Fla., for Mota.

S. David Jaffe, Miami, Fla., for Flores.

Joel C. Fanning, Linda C. Hertz, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before TUTTLE, TJOFLAT and HILL, Circuit Judges.

TJOFLAT, Circuit Judge:

Juan Flores and Evelio Mota, following a joint jury trial, were convicted of conspiracy to distribute cocaine and possession of cocaine with intent to distribute in violation of 18 U.S.C. § 2 (1976) and 21 U.S.C. §§ 841(a)(1), 846 (1976). In addition, Flores was convicted of unlawfully carrying a firearm during the commission of a felony in violation of 18 U.S.C. § 924(c)(2) (1976).

Flores's defense to the charges was that he was insane when the offenses were committed; on appeal, he contends that his defense was established as a matter of law, thus entitling him to a judgment of acquittal. Alternatively, Flores asks us to grant him a new trial; he claims that the district court denied him due process by forcing him to go to trial while suffering from amnesia. Mota seeks a new trial, contending that the district court abused its discretion in refusing his repeated request for a separate trial.[1] For the reasons set forth below, we reject the contentions of both defendants and affirm.

## I. FACTS

On November 29, 1977, Jerry Castillo, a special agent of the Drug Enforcement Administration (DEA), and an anonymous confidential informant met with Mota in Miami, Florida, pursuant to a telephone conversation the previous day, to arrange the purchase of five kilograms of cocaine. After some discussion, Castillo, Mota, and the informant proceeded to Flores's house, where Flores showed Castillo cocaine and a price, $36,000, for one kilogram of the drug was negotiated. Later that evening, Mota, Castillo, and DEA agent James Harris drove to Flores's house to complete the transaction. Castillo weighed and tested the cocaine and told Flores he would like to buy more from him in the future. Flores responded that any future sales must be arranged by Mota. Castillo, accompanied

---

1. Mota's motion for a severance from Flores's case was made, and denied, at trial on three occasions. The first was following the opening statements of counsel. The second was during the Government's case-in-chief when the pistol Flores possessed at the time of his arrest was introduced in evidence. The third was at the conclusion of Flores's defense when Mota's attorney indicated that his client would not testify if Flores were present in the courtroom. We treat Mota's motion for severance as having been made cumulatively and timely.

by Mota, returned to his vehicle, ostensibly to obtain the $36,000 purchase price. Once outside, Mota was arrested; several agents then entered the house and arrested Flores, who was carrying a fully loaded and functioning 9-millimeter semiautomatic Baretta pistol in a special holster about his waistband.

On December 7, 1977, the indictment in this case was returned against Flores and Mota; not guilty pleas were subsequently entered. On February 1, 1978, Flores notified the prosecution that he intended to rely upon the defense of insanity. Following a hearing on February 17, 1978, Flores was adjudged mentally incompetent for trial and ordered to undergo psychiatric treatment. Another competency hearing was held on March 3, 1978; by written order dated March 21, 1978, the district court found Flores competent to stand trial. In its order the court noted medical testimony indicating that Flores had suffered a complete loss of memory concerning the events upon which the charges against him were based but was capable of understanding the charges and of consulting with his attorney. On this testimony, the court concluded that amnesia alone was insufficient to render this defendant incompetent; the loss of memory could be established by Flores at trial, however, to buttress his insanity defense. Record, vol. 1, at 44–45. Flores does not challenge the propriety of this pretrial ruling. His argument is that by the conclusion of his trial it became apparent that the loss of memory had precluded him from mounting any defense to the charges; thus, he was denied a fair trial.

The defendants proceeded to trial together on May 15, 1978. Because of comments made during the opening statements of counsel, Mota promptly moved for a severance from Flores. In the prosecutor's statement, the jury had been advised of the nature of the charges contained in the indictment and the Government's proof had been previewed. The statement of Flores's attorney that followed had acknowledged "that the evidence probably will show *as to the defendant Flores*, basically what [the prosecutor] has said." *Id.* at 29 (emphasis added). The attorney went on to say, however, that Flores would be shown blameless by reason of insanity. Mota's counsel reserved his opening statement and, after the district judge gave the jury a brief preliminary instruction on conspiracy, moved for a severance. Counsel argued that Flores's opening statement amounted to an admission that Mota, as well as Flores, had committed the offenses charged and therefore foreclosed any possibility that Mota could receive a fair trial. A severance was also required because, counsel contended, the defendants would present inconsistent defenses: Mota denying that the alleged criminal conduct ever occurred while Flores was confessing but seeking to avoid responsibility for want of mental capacity. The motion for severance was denied.

The Government's proof made out an overwhelming case against both Flores and Mota. In defense, only Flores chose to present any evidence; neither defendant took the stand. Flores's evidence came from two medical witnesses, Dr. Benjamin Coleman, a psychiatrist, and Dr. Jules Trop, a general practitioner. Neither physician mentioned Flores's alleged amnesia (a matter never brought before the jury); both testified that Flores was insane at the time of the offenses. Dr. Coleman concluded that Flores was a paranoid schizophrenic who, on November 29, 1977, suffered from a disease or defect of the mind which rendered him substantially incapable of appreciating the wrongfulness of his conduct and unable to control his acts to conform to the requirements of the law. Record, vol. 2, at 108, 113. In short, in the doctor's opinion Flores was not malingering or otherwise feigning mental illness, *id.* at 114, and was legally insane. *Id.* at 113. Dr. Trop reached the same conclusion as Dr. Coleman. In rebuttal, the Government produced no expert witnesses to challenge the opinions of these physicians, relying instead on the lay testimony of those who had observed Flores before and during his involvement in the conduct set out in the indictment. Several DEA agents (Castillo, Harris and others who dealt with Flores

earlier) testified that, to them, Flores had appeared normal and exhibited no bizarre behavior.

At the close of all the evidence, Flores moved for a directed verdict of acquittal on the ground that the Government had failed to prove his sanity at the time of the charged offenses; the motion was denied. Mota also moved for an acquittal, contending that the Government's case was insufficient; the court never ruled on the motion, thereby denying it.

## II.  FLORES'S CASE

### A.  *Amnesia and Due Process* :

■ In this circuit amnesia does not constitute incompetency per se to stand trial. *United States v. Swanson*, 572 F.2d 523, 526 (5th Cir.), *cert. denied*, 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978). The propriety of trying an amnesia defendant must be determined according to the circumstances of each individual case. *Id.* We have carefully examined the record in this case and conclude that Flores's trial was not rendered constitutionally infirm because of his amnesia.

■ It is evident from the record that throughout the trial Flores was able "to consult with his [attorney] with a reasonable degree of rational understanding . . . and [had] a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). Although Flores steadfastly protested his innocence, he apparently conceded that he was present when the drug deal with the undercover DEA agents took place. In fact, neither defendant seriously questioned the Government's portrayal of the transaction. We are convinced that Flores's testimony, were he to have regained his memory of the critical events, would not have contradicted the Government's depiction of them. Consequently, we fail to see how Flores's amnesia worked a material prejudice upon him at any time as the trial progressed. *See United States v. Swanson*, 572 F.2d at 527.

In hindsight, Flores contends that his amnesia precluded the establishment of his insanity defense to the satisfaction of the jury. Flores has now concluded that the jury chose to believe the Government's lay testimony concerning his demeanor and mental state rather than that of his two physicians because the lay testimony went to the jury unimpeached. Had he been able to recollect the time surrounding his arrest, including his prior encounters with undercover DEA agents, he may have been able to testify, Flores speculates, that his behavior was not normal, as the agents described, but was instead that of one in the throes of an exacerbated state of paranoid schizophrenia. Flores has yet to demonstrate, however, through a proffer of evidence or otherwise, that a paranoid schizophrenic is capable of recalling how he acted and manifested his illness at an earlier time when experiencing an acute episode of his disease. We are not persuaded by Flores's hindsight argument.

We especially note that, following Flores's presentation of his insanity defense and the Government's rebuttal, Flores made no effort to bring the dilemma he now describes to the trial judge's attention. No request was made for a continuance, so that defense witnesses could be marshalled to contradict the Government's evidence; nor was a mistrial demanded on the ground that Flores's amnesia had become such a hindrance as to deny him a fair trial. It is clear to us that Flores's trial strategy was to convince the jury that, in the face of the physicians' testimony, it could not find him sane beyond a reasonable doubt; lay witnesses, who might dispute the Government's proof of sanity, were not critical to the execution of this strategy. In sum, Flores points to no error committed by the trial judge following the onset of the claimed amnesia-caused prejudice (which neither Flores nor his attorney then perceived), and there is nothing in the record to support a claim of plain error. *See* Fed. R.Crim.P. 52(b).

### B.  *The Insanity Defense* :

■ Flores's sanity was a question for the trier of fact to be determined from all

the evidence. *E. g., United States v. Kossa*, 562 F.2d 959, 960 (5th Cir. 1977), *cert. denied*, 434 U.S. 1075, 98 S.Ct. 1265, 55 L.Ed.2d 781 (1978). Once the issue of his sanity was raised, the Government bore the burden of proving his mental capacity beyond a reasonable doubt. *E. g., United States v. Phillips*, 519 F.2d 48, 49 (5th Cir. 1975), *cert. denied*, 423 U.S. 1059, 96 S.Ct. 796, 46 L.Ed.2d 650 (1976). Expert testimony, even when uncontradicted, is not conclusive on the issue of sanity, however, *e. g., Mims v. United States*, 375 F.2d 135, 140 (5th Cir. 1967), and the jury may find such testimony adequately rebutted by the observations of mere laymen. *E. g., Brock v. United States*, 387 F.2d 254, 257 (5th Cir. 1967).

In this case, two medical experts, one a psychiatrist and the other a general practitioner, opined that Flores was legally insane under the test of *Blake v. United States*, 407 F.2d 908 (5th Cir. 1969) (en banc). Their opinions were cast in doubt, however, in the crucible of cross-examination and by the testimony of the lay witnesses who said that Flores appeared to be normal. A clear jury issue was therefore presented.

Dr. Coleman, the psychiatrist, testified that he saw Flores but once, and the interview had to be conducted through an interpreter because Flores only spoke Spanish. The session took place some two months after the crimes occurred and lasted only two and one-half to three hours. Dr. Coleman conceded that the language barrier somewhat impeded his ability to evaluate Flores's condition, but felt that he did the best he could under the circumstances. Dr. Coleman commenced the interview with little information about the offenses or Flores's involvement. No attempt was made to verify what Flores told him, and, he acknowledged, it is possible that Flores was untruthful. Flores was so uncooperative that psychological tests could not be administered. Finally, the doctor seemingly agreed that a paranoid schizophrenic could achieve a state of remission (and sanity); he could not rule out the possibility that Flores was in remission when the crimes at issue were committed.

As for Dr. Trop, during his cross-examination he admitted that he was not qualified to treat patients with severe psychotic problems. Moreover, he knew very little about the facts of Flores's case. The jury would have been entitled to accord his testimony no weight.

In essence, we are presented with an insanity defense constructed on expert medical opinion that was placed in question on cross-examination. The cross-examination alone might have sufficed to create a jury issue on insanity. We need not decide the point, however, because the Government's proof of sanity—in the form of lay testimony—was sufficient under the circumstances to satisfy its burden of proof.

The confrontation of expert testimony of insanity and lay testimony showing normal mental capacity was faced by this court in *United States v. Hall*, 583 F.2d 1288 (5th Cir. 1978), to which we now turn for guidance.[2] As the court there noted, it is difficult to evaluate the sufficiency of the evidence of a defendant's sanity; "[e]ach case must be decided upon its own facts, with careful attention to the weight of the evidence on each side. . . . The test we employ is whether a reasonably minded juror must necessarily have had a reasonable doubt as to the defendant's legal sanity at the time of the offense." *Id.* at 1293 (footnote omitted). The court went on to observe,

> It is not necessary for the Government to present any expert testimony to meet its burden of proof. The Government can meet its burden through the testimony of lay witnesses. A defendant is not entitled to a judgment of acquittal simply because he offers expert testimony on the

---

2. We have considered Flores's argument that the Government's reliance upon *Hall* is inapposite because *Hall* involved: (1) insanity due to alcohol deterioration rather than paranoid schizophrenia, and (2) lay witnesses trained in the detection of intoxication rather than laymen with no special training to aid them in the detection of psychosis. We conclude that *Hall* is relevant because of the close similarity of the issues presented to the jury in both cases.

issue of insanity and the Government attempts to rebut it without any expert witnesses. The expert's opinion, even if uncontradicted, is not conclusive. At the same time, it may not be arbitrarily ignored, and some reason must be objectively present for ignoring expert opinion testimony.

*Id.* at 1293–94 (footnotes omitted). In *Hall* the court held the jury's finding of guilt to be supported by substantial evidence because the testimony of lay witnesses who observed the defendant at the time of his crime supported two alternative conclusions: (1) the defendant was not intoxicated, or (2) the defendant was in the latter stages of alcohol deterioration and thus was intoxicated and lacked the requisite mental capacity even though he did not so appear. Observing that the psychiatrist drew the latter conclusion while the Government's lay witnesses drew the former, the court concluded that "[t]he decision as to which opinion is correct is for the jury." *Id.* at 1294.

In the case before us, the DEA agents' testimony could lead to alternative conclusions: (1) Flores's behavior appeared normal because his illness was in a state of remission, and thus he was not legally insane, or (2) Flores was in an exacerbated psychotic state and thus insane although he did not so appear. Just as in *Hall*, the medical experts espoused the second alternative while the DEA agents adopted the first. Accordingly, it was the jury's duty to ascertain who were correct. We are convinced that "the evidence was not such that a reasonably minded juror must necessarily have had a reasonable doubt as to [Flores's] legal sanity at the time of the offense. The case was properly submitted to the jury, and the jury's finding of guilt is supported by substantial evidence." *Id.* The district court correctly denied Flores's motion for acquittal, and his convictions must stand.

**3.** We reach the same conclusion concerning an episode during closing argument in which Flores's attorney stated "[W]hat we are here about . . . is not whether there was a cocaine transaction. It is not whether or not

## III. MOTA'S CASE

Mota contends that the district court erred when it refused to grant his oral motions for severance. We do not agree. As was succinctly stated in *United States v. Swanson,*

> Motions for severance rest in the discretion of the court and will not be overturned without an affirmative showing of abuse of that discretion. . . . Moreover, the interest of judicial economy and the policy favoring joint trials in conspiracy cases must be weighed against the defendant's allegations of prejudice. . . . *The test in this circuit for reviewing the denial of a severance is that the defendant must be unable to obtain a fair trial without a severance and must demonstrate compelling prejudice against which the trial court will be unable to afford protection.*

572 F.2d at 528 (citations omitted) (emphasis added). Mota has failed to demonstrate that he was unduly prejudiced through his trial with Flores.

Mota insists that severance was mandated when, during opening statement, Flores's attorney observed that *as to Flores* the evidence would probably show what the Government contended. This statement, Mota maintains, amounted to an admission of guilt by one co-conspirator and equally inculpated the other. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and its progeny, the argument concludes, required a severance.

Mota deems insignificant the fact that counsel's concession as to what the evidence might establish was made during opening statement, not by Flores himself. The jury was promptly and adequately cautioned by the court, as it was when the trial began, that the comments of counsel were not evidence and could not be considered as such. This instruction was repeated whenever appropriate during the trial. Under the circumstances, we fail to see how Mota was prejudiced by the remarks of Flores's attorney.[3] *See United States v. Soto,* 591 F.2d

somebody broke the law, but whether or not somebody is guilty. Juan Flores is not guilty under the law." Record, vol. 2, at 201.

1091, 1100–01 (5th Cir. 1979), *cert. denied,* —— U.S. ——·, 99 S.Ct. ——·, 60 L.Ed.2d ——— (U.S. June 12, 1979) (No. 78-1728); *United States v. Sacco,* 563 F.2d 552, 555 (2d Cir. 1977), *cert. denied,* 434 U.S. 1039, 98 S.Ct. 779, 54 L.Ed.2d 789 (1978).

■ Mota's contention that he was entitled to a severance because his defense was inconsistent with that of Flores must similarly be rejected. To compel a severance, the alleged conspirators' defenses must be irreconcilable, not merely antagonistic. *United States v. Swanson,* 572 F.2d at 529. In this case, Mota's general denial was not inconsistent with Flores's insanity defense. It is true that Flores did not undertake to refute the weighty and unimpeachable evidence against him; at the same time, however, he never admitted his guilt. He chose to avoid conviction by contending that, whatever the Government's proof, he was insane. Flores introduced no testimony that implicated Mota in any way.

Mota's counsel conceded in closing argument that Mota was present at the scene of the crime. If Mota had wished to take the stand and testify to his innocence, asserting that he was a mere bystander and that Flores was the culprit, nothing about the defense put forward on behalf of Flores prevented Mota from doing so. This tactic would have caused no harm to Flores, whose defense could have been maintained despite the incrimination. Mota, however, refused to take the stand. The announced reason for his refusal and the basis for his renewal of his severance motion was that Flores was present in the courtroom, see note 1 *supra.* This cannot form the basis for a severance; the fact remains that Mota incurred no undue prejudice from his joint trial with Flores. *Cf. United States v. Eastwood,* 489 F.2d 818, 822 (5th Cir. 1973) (fact that co-defendant relies upon entrapment defense not sufficient to compel severance absent clear showing of prejudice).

Mota's final argument for reversal is that he was unduly prejudiced by the Government's introduction into evidence of the pistol Flores was carrying at the time of his arrest, see note 1 *supra.* We are asked to hold that the sight of this weapon tended to inflame the jury against Mota and required a severance of his case from Flores's. The trial judge instructed the jury on several occasions that only Flores was charged with unlawful possession of the firearm and that it could only be considered as to the charges against Flores. Mota points to nothing in the record indicating that the jury may have been led by the court or counsel to believe that the weapon was part of the Government's case against him. We find no error in the court's reception or treatment of this evidence. We also conclude that the trial judge acted well within his discretion in denying Mota's cumulative motion for severance made, as we have discussed, following the opening statements of counsel, the reception of the pistol in evidence, and when Mota was called upon to present his defense.

## IV. CONCLUSION

We have rejected all the contentions raised in this appeal. The judgments of the district court are

AFFIRMED.