**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael Jeffrey SALOMON,
Defendant-Appellant.**

No. 79–5184.

United States Court of Appeals,
Fifth Circuit.

Jan. 15, 1980.

---

Donald A. Lykkebak, Orlando, Fla. (Court-appointed), for defendant-appellant.

Kendell W. Wherry, Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellee.

Appeal from the United States District Court for the Middle District of Florida.

Before SIMPSON, CHARLES CLARK and FRANK M. JOHNSON, Jr., Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

After a three-day trial, a jury of the United States District Court for the Middle District of Florida convicted Michael Jeffrey Salomon and his co-defendant, William Wood III, of possessing with intent to distribute a controlled substance—phencyclidine (PCP)—in violation of 21 U.S.C. § 841(a)(1). Salomon appeals the conviction. We conclude that defendant has demonstrated substantial prejudice resulting from the failure of the district court to grant his repeated motions for severance of trial. Therefore, we reverse and remand for new trial.

Salomon's main contention on appeal concerns testimony elicited from defendant Wood. After the Government rested its case, Salomon presented no evidence.[1]

---

1. The Government in its case-in-chief presented evidence that agents Michael Morris and Michael Tyson of the Orlando, Florida, Police Department met with William Wood at his home

Wood's attorney thereupon addressed the jury and Wood then took the stand in his own defense. Wood's defense to the charges was that Salomon was "the man" and that agents Morris and Tyson had entrapped Wood into facilitating the transfer of PCP from Salomon to the police.

In the course of Wood's testimony, he described the events of December 13–16, 1978, the acts for which he and Salomon were charged. Additionally, however, Wood stated that on two earlier occasions within a month before his arrest he had received from Michael Salomon quantities

of PCP and, after he sold the drug to the agents, he turned the proceeds over to Salomon. On cross-examination by the Government, Wood more specifically recounted the two prior instances and narrowed the occurrences to specific dates (November 21 and 30, 1978) and detailed the circumstances surrounding each.[2] Although the trial court denied Salomon's motion for severance, the judge stated his intention to instruct the jury to consider the evidence of prior transactions only against Wood and only on the issue of entrapment and his predisposition to commit the offense. The court·did so charge the jury.[3]

on December 13, 1978. Morris and Tyson brought to the meeting $30,000 and after the three traveled to a shopping center parking lot Wood examined the money. He told the agents that he would contact them with more information concerning the impending drug sale. At another meeting at Wood's house on December 15, Wood received a telephone call after which he informed Morris and Tyson that later that night he would have the exact details of the transaction.

On December 16, the agents arrived at Wood's home and Wood once again examined the money and told the officers that everything was ready. The agents left and returned at approximately 7:30 p. m. Wood requested that they conduct the sale inside the house but the officers refused. They waited in the utility room adjacent to the kitchen while Wood entered the house. Through the kitchen door, which was left slightly ajar, Morris and Tyson heard Wood tell an unseen individual that the buyers wanted to see the PCP in the utility room before they would enter the house. The agents then heard the person respond that "I don't want to do the fucking thing out there. Have them come inside." Nevertheless, Morris and Tyson persisted and Wood went back into the house and then into the back yard where he picked up a package from behind the fence. He returned to the utility room and the agents arrested him after they observed the drugs. Following the arrest other officers surrounded the house and the police made several requests for the person to come out. Finally, after the police made a phone call to the house, Michael Salomon emerged. The agents then entered but found no one else.

After the Government presented its case, Salomon moved for judgment of acquittal based upon the sufficiency of the evidence. The district court denied the motion. Following trial, Salomon again moved for judgment of acquittal. The court again denied the motion.

2. The cross-examination concerning the two prior sales was first developed outside the pres-

ence of the jury. Before the· jury Wood testified that on November 16, 1978, he provided Morris and Tyson with a quantity of PCP he had obtained from Salomon. In return he received $420, $20 of which he kept and the rest of which he turned over to Salomon. Wood stated that on November 30, 1978, at approximately 9:00 p. m., he again supplied the agents with PCP. This time he received $1,200 which he gave to Salomon. Wood testified that before each of the instances he traveled to Michael Salomon's home where Salomon provided Wood with the drugs. Following the development of the cross-examination, Salomon renewed his motion for severance. The motion was denied.

3. "The evidence of [Defendant Wood's] engagement in other drug transactions, may be considered by you only as evidence relating to [his] predisposition, if any, to commit the offense charged." Upon denying Salomon's motion for severance following the proffered cross-examination of Wood on the two November transactions the court stated "a rather firm belief that that evidence could have been admitted in the Government's case-in-chief." Because we reverse and remand under the instructions as given by the court, we are not compelled to reach the question of the admissibility of the evidence against Salomon under Rule 404(b) of the Federal Rules of Evidence. Nevertheless, we note that in at least two other circuits the court's belief would have been fully justified. See United States v. Adcock, 558 F.2d 397, 402 (8th Cir.), cert. denied, 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977); United States v. Brettholz, 485 F.2d 483, 487–88 (2d Cir. 1973), cert. denied, 415 U.S. 976, 94 S.Ct. 1561, 39 L.Ed.2d 871 (1974). In the Fifth Circuit, however, the law governing the issue is much less clear. Our en banc decision in United States v. Beechum, 582 F.2d 898 (5th Cir. 1978) (en banc), specifically reserved the issue of whether extrinsic offense evidence is admissible on the issue of intent in the prosecution's case-in-

Rule 14 of the Federal Rules of Criminal Procedure authorizes the trial court to grant severance of defendants "[i]f it appears that a defendant . . . is prejudiced by a joinder of . . . defendants . . . for trial together." From the face of the rule it is clear that the decision of whether to grant severance is properly within the sound discretion of the trial court. This Court on appeal will reverse a trial court's failure to grant severance only where the court has abused its discretion. *United States v. Bolts,* 558 F.2d 316, 322 (5th Cir.), *cert. denied,* 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1977). In order to demonstrate abuse of discretion, the defendant bears a heavy burden of establishing compelling prejudice.[4] Under the circumstances of this case we believe Salomon has established requisite prejudice under Rule 14 that necessitates reversal and remand for new trial.

The prejudice Salomon suffered as a result of the trial court's failure to grant severance does not stem from defendant Wood's assertion of an entrapment defense coupled with a contention that criminal responsibility ought to lie solely with Salomon. Clearly, a co-defendant's reliance on a theory of entrapment cannot of itself justify reversing a trial court decision not to sever. *United States v. Eastwood,* 489 F.2d 818, 822 (5th Cir. 1973); *see United States v. Russo,* 455 F.2d 1225, 1227 (5th Cir.), *cert. denied,* 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972). Rather, a "defendant must demonstrate that the defenses are antagonistic to the point of being mutually exclusive." *United States v. Marable,* 574 F.2d 224, 231 (5th Cir. 1978). Here, despite the antagonism between Wood's and Salomon's defenses, Salomon has failed to show mutual exclusivity and, on that ground, has not established prejudice sufficient to require reversal.

The prejudice that Salomon suffered resulted from the testimony of defendant Wood. Salomon offered no witnesses in his defense. Nevertheless, Wood, once on the stand, implicated Salomon in past drug dealings in which Wood also was involved. Evidence of prior criminal offenses relating only to one defendant does not generate prejudice arising to the level that requires severance. *See United States v. Davis,* 546 F.2d 617, 620 (5th Cir. 1977); *United States v. Perez,* 489 F.2d 51, 67 (5th Cir. 1973), *cert. denied,* 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974). In the present case, however, Wood's testimony clearly inculpated Salomon.

In circumstances in which one defendant claims prejudice resulting from jury consideration of evidence admitted only with regard to another defendant, the standard for determining prejudice is whether the jury can be expected to follow the court's instructions. The test is whether

. . . under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted.

*United States v. Wasson,* 568 F.2d 1214, 1222 (5th Cir. 1978) [quoting *Tillman v. United States,* 406 F.2d 930, 935 (5th Cir.), *vacated in part,* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969)]. We believe that the district court was unable to protect Salo-

---

chief where it is not clear that defendant's defense will be based on lack of intent. *Id.* at 915; *see United States v. McMahon,* 592 F.2d 871, 876 & n. 7 (5th Cir. 1979).

4. "The test in this circuit for reviewing the denial of a severance is that the defendant must be unable to obtain a fair trial without a severance and must demonstrate compelling prejudice against which the trial court will be unable to afford protection." *United States v. Mota,* 598 F.2d 995, 1000 (5th Cir. 1979) [quoting *United States v. Swanson,* 572 F.2d 523, 528 (5th Cir.), *cert. denied,* 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978)].

mon from the danger of the jury considering against Salomon Wood's testimony regarding the November transactions.

The general exclusionary nature of Rule 404, Federal Rules of Evidence, makes it clear that evidence of character or offenses other than those with which a defendant is charged must be treated carefully and received for limited purposes only. Specifically, Rule 404(b) precludes evidence of extrinsic offenses "to prove the character of a person in order to show that he acted in conformity therewith." The limitations of Rule 404(b) on the admissibility of evidence of extrinsic offenses have produced one of the most frequently litigated questions of evidence. 22 C. Wright and K. Graham, Federal Practice & Procedure § 5239 at 427 (1978). The concern over the scope of admissibility of extrinsic offenses arises from the danger of jury consideration of the offenses as indicative of a defendant's propensity to commit the crime with which he is charged. *See United States v. Beechum, supra*, 582 F.2d at 910. As Mr. Justice Jackson stated in *Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948),

> [t]he inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so over-persuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.

During the trial of Wood and Salomon the district court instructed the jury to consider Wood's testimony regarding the earlier drug sales with respect to Wood's

defense of entrapment only. Nevertheless, the testimony directly implicated Salomon. It cannot be expected that the jury could evaluate the testimony with regard to defendant Wood and simultaneously ignore the statements in determining Salomon's guilt. We believe that it would have been "insurmountably difficult" for the jury to appropriately restrict its consideration of the evidence of earlier drug transactions. *See United States v. Harris*, 458 F.2d 670, 673 (5th Cir.), *cert. denied*, 409 U.S. 888, 93 S.Ct. 195, 34 L.Ed.2d 145 (1972).[5]

In determining whether prejudice resulting from the trial court's failure to grant severance requires reversal, our decisions mandate balancing the possible prejudice to the defendants against the public's interest in economy of judicial administration. *United States v. Crawford*, 581 F.2d 489, 491 (5th Cir. 1978). We cannot say here that because of overwhelming evidence of Salomon's guilt any prejudice resulting from jury misuse of the evidence was harmless beyond a reasonable doubt. *See United States v. Jackson*, 588 F.2d 1046, 1056 (5th Cir.), *cert. denied*, —— U.S. ——, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979); *United States v. Bynum*, 566 F.2d 914, 926 (5th Cir.), *cert. denied*, 439 U.S. 840, 99 S.Ct. 129, 58 L.Ed.2d 138 (1978). Salomon opted not to present witnesses in his defense and moved for judgment of acquittal at the end of prosecution's case and again following the jury verdict. As in *United States v. Wasson, supra*, the evidence other than that concerning the November drug sales is sufficient to support a jury verdict,[6] but it is not so strong that we can determine that

---

**5.** In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court examined a joint trial at which incriminating extra-judicial statements of one defendant were introduced against that defendant. The Court found that admission of the statements against one defendant violates a co-defendant's Sixth Amendment right of confrontation at least where the defendant against whom the statements were introduced failed to testify. The Court so held "because of the substantial risk that the jury, despite instructions to the contrary, looked at the incriminating . . statements in determining petitioner's guilt . . . ." 391 U.S. at 126, 88 S.Ct. at 1622.

The Court in *Bruton* overruled *Delli Paoli v. United States*, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), and "repudiated" its "basic premise" that it is " 'reasonably possible for the jury to follow' " a cautionary instruction of the court to consider the incriminating statements only against the defendant against whom the evidence was admitted. 391 U.S. at 126, 88 S.Ct. at 1622 (quoting *Delli Paoli, supra*, 352 U.S. at 239, 77 S.Ct. 294). The danger of jury misuse of evidence in the present case seems not unlike that spoken to in *Bruton*.

**6.** *See* note 1, *supra*.

impermissible consideration did not "tip the scales" in favor of the Government. 568 F.2d at 1223. Similarly, the needs of judicial economy do not greatly conflict with the finding that the court's refusal to grant Salomon a severance constituted error. The trial lasted only a relatively short time and involved but two defendants and an uncomplicated factual setting. It would not have been impractical to have conducted separate trials. *See United States v. Crawford, supra,* 581 F.2d at 492; *United States v. Johnson,* 478 F.2d 1129, 1134 (5th Cir. 1973). Accordingly, we REVERSE and REMAND for a new trial.