UNITED STATES of America,
Plaintiff-Appellee,

v.

Anthony John ROMANELLO, Victor Antonio Mendez and Gerald Thomas Vertucci, Defendants-Appellants.

No. 83–2206.

United States Court of Appeals,
Fifth Circuit.

Feb. 17, 1984.

Rehearing and Rehearing En Banc
Denied April 18, 1984.

Ramsey Clark, Lawrence W. Schilling, New York City, Harold Borg, Kew Gardens, N.Y., for Romanello and Mendez.

William W. Burge, Houston, Tex., for Vertucci.

James R. Gough, Ronald G. Woods, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG, GEE and TATE, Circuit Judges.

GOLDBERG, Circuit Judge:

... I saw a lizard come darting forward on six great taloned feet and fasten itself to a [fellow soul].... [T]hey fused like hot wax, and their colors ran together until neither wretch nor monster appeared what he had been when he began....[1]

The joint trial of conspiracy defendants was originally deemed useful to prove that the parties planned their crimes together. However, it has become a powerful tool for the government to prove substantive crimes and to cast guilt upon a host of co-defendants. In this case, we are concerned with the specific prejudice that results when defendants become weapons against each other, clawing into each other with antagonistic defenses. Like the wretches in Dante's hell, they may become entangled and ultimately fuse together in the eyes of the jury, so that neither defense is believed and all defendants are convicted. Under such circumstances, the trial judge abuses its discretion in failing to sever the trials of the co-defendants. Today we hold that the defense of Gerald Vertucci was antagonistic to the defenses of Anthony Romanello and Victor Mendez and that Vertucci should have been severed from his co-defendants.

## I. FACTS

On December 3, 1981, Italian citizens Marcello Farneda and Giuseppi Longhin arrived at the Houston airport, carrying suitcases containing gold chains. Farneda and Longhin were en route from Italy to Mexico. Vertucci, an employee of Air France, met Farneda and Longhin in the Customs area of the terminal. After a Customs inspection, Farneda and Longhin gave their bags to Vertucci for storage until they left for Mexico the next day (Dec. 4). Vertucci placed the bags in the Air France storeroom.

At approximately 6:30 that night (Dec. 3), Vertucci asked an Air France manager to open the storeroom. Vertucci removed the bags and loaded them into a van parked outside the terminal. Vertucci drove off. Later at trial, Vertucci's counsel would argue that Vertucci was transferring the gold to another terminal from which Longhin and Farneda planned to depart the next day. The government would argue that

1. *Dante, The Inferno,* Canto XXV, Circle 8, Bolgia 7, lines 46–48, 58–60 (J. Ciardi, transl.).

Vertucci was removing the gold from the airport permanently.

At approximately 2:00 a.m. on December 4, 1981, one Kenneth Ellis was awakened by his dogs. He discovered Vertucci handcuffed to a light pole at the end of Ellis' driveway. Ellis lived in Chambers County, Texas, approximately 50 minutes by car from Houston airport.

Ellis freed Vertucci. In subsequent statements to police officials, Vertucci maintained that he had been robbed of the gold. According to his story, one man holding a gun accosted him while he was loading the gold into the van at the Air France terminal. The gunman ordered him into the van and directed him to drive away. The gunman was joined by a second man at a nearby motel parking lot. They loaded the gold into an automobile and drove off with the captive Vertucci. As they entered the automobile, Vertucci looked at the license plate but could not read it because it was bent. A short time later, the driver stopped and got out of the car, and Vertucci heard a banging noise as if the license plate were being straightened. Vertucci described the automobile as having a light-colored exterior and a dark interior. It was a large four-door, maybe a Chevrolet, about four or five years old. It had a radar detector.

According to Vertucci's statements he was driven out to Chambers County, and handcuffed to the light pole. The gunman held his weapon against Vertucci's head, and clicked the hammer; then he punched Vertucci three times in the head. The gunman told Vertucci that if he described his assailants they would return and kill him and his family. The assailants then drove off in their car.

Despite the threat, Vertucci described the two men to the police. He described the gunman as a white male, 5'6" to 5'7", 140 to 150 pounds, with a youngish face. The man was clean shaven with short, black, combed-back hair. He had large, brown eyes and a medium-to-olive complexion. He was wearing a leather jacket and a pullover shirt.

Vertucci described the second man as a white male, about 30 years old, six feet tall, weighing approximately 210 pounds. He had short black hair, combed back into a kind of "close Afro." He was clean-shaven and had no sideburns. He had dark eyes and wore jeans and a long-sleeved polo shirt. He was bigger and had a lighter complexion than the gunman.

On December 5, 1981, Nick Theodos of the New Jersey State Patrol stopped a vehicle for speeding on the New Jersey Turnpike. Mendez was driving and Romanello was asleep in the back. Mendez invited Officer Theodos to search the car, and the trooper discovered two packages containing gold chains. Officer Theodos arrested Mendez and Romanello. A subsequent investigation revealed that the gold was the same as that which Longhin and Farneda had brought into the Houston airport.

At trial Officer Theodos described the car as a two-toned, blue 1977 Chevrolet with four doors. It had a radar detector and a bent license plate. Officer Theodos did not describe Romanello and Mendez who were present at trial.

During the investigation of Romanello and Mendez, John Hensely (one of the agents who had questioned Vertucci) determined that Vertucci's description of his assailants and their vehicle matched Romanello and Mendez and their automobile. However, Vertucci was not able to pick their photographs out of a line-up.

On December 18, Romanello and Mendez were indicted by Texas state authorities for the offenses of aggravated kidnapping and robbery of Vertucci. On February 10, 1982, the state charges were dismissed.

On March 29, 1982, Romanello, Mendez and Vertucci were all indicted in four felony counts by a federal grand jury. The counts were:

1. stealing jewelry in violation of 18 U.S.C. §§ 659 and 2;

2. importing jewelry into the United States in violation of 18 U.S.C. §§ 542 and 2;

3. transporting stolen goods in interstate commerce in violation of 18 U.S.C. §§ 2314 and 2;

4. conspiring to commit the offenses described in counts 1–3 as well as to obstruct justice in violation of 18 U.S.C. § 371.

The government's theory was that all three defendants participated in the conspiracy and performed various acts in furthering the planned crimes. Vertucci allegedly took the gold from the airport; then he was handcuffed to a pole in order to create the appearance of a robbery. His description of his "assailants" was accordingly partly accurate and partly vague. Accuracy on some points would help him remember details and appear consistent before the police; vagueness on other points would prevent the police from actually catching his co-conspirators. According to the government, Romanello and Mendez were to carry out the next stage of the theft, transporting the gold to New York. However, they were stopped by Officer Theodos before they reached their destination.

## II. PROCEEDINGS BELOW

The three defendants were tried together before a jury in the United States District Court for the Southern District of Texas.

The defendants filed pretrial motions and supplemental motions for severance pursuant to Fed.Rule Crim.Proc. 14. They alleged, *inter alia,*[2] that their defenses were antagonistic and that joinder would have the effect of denying them a fair trial. The parties argued the issue before the trial court, and during the trial, he entered an order denying the motion. He held that

2. Vertucci also alleged that Romanello and Mendez would exculpate him if he were tried separately. The trial court did not grant a severance, stating that Vertucci had failed in his burden of specifying: (1) a bona fide need for the testimony, (2) the likelihood of such testimony, (3) the substance of such testimony, and (4) the exculpatory nature and effect of such testimony. *See United States v. Butler,* 611 F.2d 1066, 1071 (5th Cir.1980).

3. Vertucci argues on appeal that the trial court erred in admitting the statements of two witnesses

Vertucci's defense was not sufficiently in conflict with the defenses of Romanello and Mendez to justify severance:

At the core of Vertucci's defense of robbery and kidnapping lies his contention that he was not involved in the criminal conspiracy and that he lacked the requisite criminal intent. Mendez and Romanello's claim of noninvolvement and lack of criminal intent is more apparent from their defense that they were not present at the airport at any of the relevant times and that they had no clue that the gold they attempted to transport to New York was stolen. Neither camp's defense requires the jury to find the other guilty. Although Vertucci gave the authorities descriptions of his assailants which bear a resemblance to his co-defendants, he has never accused or identified them as being his attackers. In sum, the Court concludes that the joint trial of defendants Romanello, Mendez and Vertucci has not, to date, denied them a fair trial.

*Trial Record,* Vol. I, 75–76. The judge's conclusions partly reflect Vertucci's failure to take the witness stand at trial and specifically point the finger at his co-defendants.

The joint trial proceeded. At the close of the evidence, the jury returned verdicts of guilty on all counts against all defendants. Vertucci was sentenced to seven years imprisonment. Romanello and Mendez were sentenced to ten years imprisonment.

This appeal follows.

## III. DISCUSSION

The Rule 14 issues comprise only a small cluster within a greater galaxy of legal claims.[3] Given our resolution of the sever-

nesses (Longhin and Farneda) and in refusing to give a requested jury instruction on the law concerning property held "in bond" in Customs.

Romanello and Mendez claim that the denial of severance coupled with Vertucci's decision not to take the witness stand denied them their Sixth Amendment rights to confront a witness against them. They also argue that certain testimony concerning Farneda should not have been excluded; and they join Vertucci in attacking the admission of Longhin's statements.

ance claim, however, we need not explore those other astral regions.[4] Our universe is limited to the Rule 14 question.

## A. Requirements for Severance

The Fifth Circuit has developed a fairly consistent litany of tests for determining whether severance is required in the "antagonistic defense" situations. This case involves a unique application of these tests, however, and raises some novel legal questions.

The hornbook rules can be found in *United States v. Crawford,* 581 F.2d 482 (5th Cir.1978), and *United States v. Berkowitz,* 662 F.2d 1127 (5th Cir. Unit B, 1981). *See also United States v. Sheikh,* 654 F.2d 1057 (5th Cir.1981); *United States v. Johnson,* 478 F.2d 1129 (5th Cir.1973). Persons indicted together should ordinarily be tried together. Rule 14, however, provides an exception to this general rule:

> If it appears that a defendant ... is prejudiced by a joinder of ... defendants ... for trial together, the court may grant a severance of defendants or provide whatever other relief justice requires.

Fed.R.Crim.Proc. 14; see *Crawford, supra,* 581 F.2d at 491. The decision whether to sever defendants lies within the discretion of the trial court. The court's decision should not be overturned absent an abuse of discretion. *Id.; Berkowitz, supra,* 662 F.2d at 1132. In order to establish an abuse of discretion, a defendant must show that he received an unfair trial and suffered compelling prejudice against which the trial court was unable to afford protection. *Id.*

When co-defendants have antagonistic defenses, the courts have applied very specific tests to determine whether the trial was unfair. To compel severance the defenses must be antagonistic to the point of being irreconcilable and mutually exclusive. *Berkowitz,* 662 F.2d at 1133; *Crawford,* 581 F.2d at 491. The essence or core of the defenses must be in conflict, such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other. *Berkowitz,* 662 F.2d at 1134, *Sheikh,* 654 F.2d at 1065. Such compelling prejudice does not arise where the conflict concerns only minor or peripheral matters which are not at the core of the defense.

## B. Irreconcilability and Mutual Exclusivity of the Defenses

We hold that the core of Vertucci's defense at trial was sufficiently antagonistic to the core of the defenses of Romanello and Mendez. Vertucci claimed, through his counsel, that Romanello and Mendez had robbed him. The core of his defense was that they had taken the gold from him at gunpoint, and, therefore, he had an excuse for the gold's disappearance. Romanello and Mendez offered the defense that they had not stolen the gold but had innocently accepted a job to drive it to New York. In line with this, they argued that Vertucci's story was a lie invented by the real gold smugglers. Obviously these defenses are irreconcilable and mutually exclusive. If the jury believed that Romanello and Mendez robbed Vertucci, then it could not believe that they were innocent shippers. On the other hand, if the jury believed their defense, then they could not have robbed Vertucci, and his defense would cave in.

It is not necessary for each defendant to base the core of his defense on the direct accusation of his co-defendant. Severance may be required if only one defendant accuses the other, and the other denies any involvement. For example, in *United States v. Johnson, supra,* two defenses were held to be "completely contradict[ory]" though only one defendant (Smith) had incriminated his co-defendant (Johnson). 478 F.2d at 1132. The government had charged both Smith and Johnson with passing counterfeit money. Smith's defense at trial was that he was a government informer whose

---

Finally, each defendant argues that the evidence was not sufficient to support a verdict against him.

4. We do hold, however, that the evidence was sufficient to support the verdicts against all three defendants.

only purpose was to help the police apprehend Johnson. Johnson's sole defense was that he had "played no part in the crime and was not present when it was committed." *Id.* Johnson never accused Smith; yet this Court held that "the theory of Smith's defense was directly in conflict with Johnson's." *Id.* at 1132–33. The trials of the co-defendants should have been severed; therefore, Johnson's conviction was reversed. *Id.*[5]

In the same way, there is an irreconcilable conflict between the defenses in our case. *Johnson* provides clear precedent for reversing the convictions of Romanello and Mendez;[6] and, as we shall discuss later, Vertucci too should be retried.

### 1. *Accusation by Vertucci's Counsel*

■ The government argues, however, that even the convictions of Romanello and Mendez should be affirmed because Vertucci himself never identified them as his attackers.[7] The trial court had relied on this point in holding that the various defenses were not mutually exclusive:

> Neither camp's defense requires the jury to hold the other guilty. Although Vertucci gave the authorities descriptions of his assailants which bear a resemblance to his co-defendants, he has never accused or identified them as being his attackers.

Trial Record, Vol I., 76–77.

We disagree, however, with the underlying premise that Romanello and Mendez could not be identified if Vertucci himself did not do it. On the contrary, we hold that Vertucci's counsel made the specific accusation, and that under the circumstances of this case an accusation by counsel is sufficient to create an antagonistic defense. In his opening statement to the jury, Vertucci's lawyer (Mr. Burge) declared:

> [Vertucci] described his assailants. He described their vehicle. Less than two days after that, two men are arrested in New Jersey. They are stopped in New Jersey for a traffic offense, and the gold that was stolen from Gerald Vertucci was in their car.
>
> The descriptions, when Gerald Vertucci was talking to the authorities, of the vehicle matched, and based on those descriptions that Gerald Vertucci gave in cooperating with the authorities, the state Grand Jury indicted Romanello and Mendez for aggravated robbery and aggravated kidnapping of Gerald Vertucci.
>
> .   .   .   .   .
>
> So I ask you, as you listen to the evidence, listen closely; listen closely. Don't lump Gerald Vertucci in with the two men sitting across the table from him. Listen to the evidence as to Gerald Vertucci and separate him and listen to the evidence. He doesn't have any choice but to be sitting in this courtroom today, but don't lump him in with the other two.

---

5. The conviction of Smith was not reversible, because he was "not highly prejudiced in the presentation of his defense by Johnson's presence at trial." *Id.* at 1132. Moreover, Smith had not appealed on this ground. *Id.* at 1131.

6. Our case is distinguishable from others in which severance has been denied. In *Berkowitz,* each defendant admitted his own participation in the crime but described his co-defendant as more deeply involved. 662 F.2d at 1132–33. In *Sheikh,* both defendants denied knowledge that heroin was contained in a packing crate, but neither indicated that he believed the co-defendant to have that knowledge.

   In contrast to both *Berkowitz,* and *Sheikh,* Vertucci's claim of innocence was premised on his co-defendants' guilt; and the co-defendants in turn attempted to disprove his defense.

   Our case is likewise distinguishable from *United States v. Swanson,* 572 F.2d 523, 529 (5th Cir.1978) (defense of lack of intent not irreconcilable with co-defendant's claim of non-involvement); *United States v. Salomon,* 609 F.2d 1172, 1175 (5th Cir.1980) (entrapment defense did not necessarily prove that co-defendant guilty); and *United States v. Marable,* 574 F.2d 224 (5th Cir.1978) (claim of non-involvement not irreconcilably antagonistic to defendant who offered no defense).

7. The government also argues that the three defendants could not be antagonistic, because Romanello and Mendez had offered to exculpate Vertucci if he were tried separately. Brief of Appellee at 42–43. This argument appears somewhat specious, however, since Romanello and Mendez never actually exculpated Vertucci before the jury after their motion for severance was denied.

Trial Record, Vol. IX, 30, 32–33. Throughout the trial, counsellor Burge reminded the jury that the state had indicted Romanello and Mendez for robbing and kidnapping his client, *see, e.g., id.,* Vol. XIII, 23 (cross examination of John Hensely), Vol. V, 80 (cross examination of Officer Theodos); Vol. XV, 120 (closing argument)[8]; and that Vertucci had accurately described his assailants, *id.,* Vol. XII, 76–79 (cross examination of Officer Theodos to show that Mendez's car matched Vertucci's description), Vol. VIII, 23 (cross examination of John Hensely), Vol. XV, 133 (closing argument).

An accusation by counsel can state the core of his client's defense and cast blame on the co-defendant. As Judge Tate stated for the majority in *United States v. Sheikh:*

> The taking of an adversarial stance on the part of counsel for co-defendants may generate trial conditions so prejudicial to the co-defendant under multiple attack [i.e., by the government and his co-defendant's lawyer] as to deny him a fair trial.

654 F.2d at 1066.[9] We think those conditions existed in this case. The core of Vertucci's defense, as pressed by counsel, was that Romanello and Mendez had robbed him. The two defense camps were antagonistic.

▆ To be sure, there was a theoretical possibility that the jury might acquit all defendants in the belief that Vertucci was robbed but that his counsel identified the wrong culprits. However, that possibility also exists in cases where a defendant identifies his codefendant. In both situations, the jury must weigh conflicting evidence

and always has the option of acquitting every defendant.[10] The real question for a court in considering a severance motion is not how convincing a defendant's evidence is, but whether the core of his defense directly implicates the co-defendant. We believe that the core of Vertucci's defense directly accused Romanello and Mendez. Moreover, that accusation was substantiated when the government introduced Vertucci's description of his assailants and argued that the description accurately matched Romanello and Mendez. *See* Trial Record, Vol. XV, 89. As a practical matter, the arguments by counsellor Burge as well as the government identified Romanello and Mendez as Vertucci's alleged assailants. We hold that the defense of Vertucci was mutually exclusive of and irreconcilable with the defenses of Romanello and Mendez.

To reach a different conclusion would put defendants like Romanello and Mendez in an impossible position. They would suffer compelling prejudice because of the accusation by a co-defendant's lawyer, but their hope for severance would be dashed because their co-defendant refused to testify.

### C. *Prejudice to Romanello and Mendez*

The prejudice to Romanello and Mendez was clear in the present case. As we have seen, they faced an extra prosecutor in the guise of Vertucci's counsel. *See United States v. Sheikh, supra,* 654 F.2d at 1066; cf. *United States v. Johnson, supra,* 478 F.2d at 1132–33. In cross-examination of government witnesses, attorney Burge showed that his client's description matched Romanello and Mendez in details that the

---

8. The government argues that references to the state indictments did not prejudice Romanello and Mendez, because other trial testimony proved that the indictments had been dismissed. Brief of Appellee at 42. The prejudice can remain, however, as evidenced by evidentiary rules preventing the jury from learning of certain indictments that did not lead to convictions. *See, e.g.,* Fed.R.Evid. 404(b), 608(b), 609.

More important, the government's argument does not contradict our basic point that William Burge identified Romanello and Mendez as the men who attacked Vertucci.

9. Throughout criminal jurisprudence, we identify clients with their lawyers. There is no reason to treat them any differently in the context of Rule 14.

10. For example, in *United States v. Crawford, supra,* 581 F.2d at 490–491, the jury was faced with conflicting testimony about the possession of a shotgun. Although the jury might have concluded that neither co-defendant possessed the gun, this court held that their defenses were antagonistic. *Id.* at 492.

government had neglected to mention. *See* Trial Record, Vol. XII, 76–79, 141. In addition, Burge constantly reminded the jury of the state charges against the co-defendants. Even the government objected to this testimony. *Id.* at 80–81. Finally, Vertucci's defense depicted Romanello and Mendez as violent thugs who threatened to kill him if he testified. The totality of these accusations was truly prejudicial. Romanello and Mendez did not receive a fair trial.

### D. *Prejudice to Vertucci*

Whether Vertucci suffered sufficient prejudice to deserve a new trial is a more complicated issue. Since Romanello and Mendez did not base their defenses on a direct accusation of Vertucci, he is superficially different from the typical co-defendant receiving a new trial for failure to sever. *Cf. United States v. Crawford, supra,* 581 F.2d at 492 (each defendant accusing the other). Moreover, although *United States v. Johnson, supra,* seems at first to bear a resemblance to our case, it too is not on point. The formal similarity is that defendant Smith (like Vertucci) incriminated Johnson without having Johnson base his defense on Smith's guilt. The distinction, however, is that Johnson (unlike Romanello and Mendez) did not attack Smith at all. In addition, Smith did not appeal the denial of severance. 478 F.2d at 1131.

Therefore we are faced with a question of first impression: whether Vertucci may deserve a new trial if the core of his defense is his co-defendants' guilt, but the core of their defense does not directly accuse him. We hold that under the circumstances of this case, Vertucci does deserve a new trial.

The prejudice to Vertucci arising from the joint trial was compelling. Although the core of Romanello's and Mendez' defense was not Vertucci's guilt, they did have to disprove his defense. They chose to attack the credibility of his statement to the police. They painted him as an abettor of gold smugglers who fabricated the robbery story in order to shift suspicion from themselves to Romanello and Mendez, the innocent couriers.

The attorney for Romanello (Mr. Borg) cross-examined Agent Hensely about Vertucci's statement and elicited testimony that the robbery defense was suspicious from the start. Trial Record, Vol. XIII, 55–59.[11] Then, in closing argument, Borg declared that "Vertucci was not robbed." *Id.,* Vol. XV, 187. The discrepancies between the actual appearance of his co-defendants and his description of the "supposed gunmen" proved that he had been told by smugglers to give the description of Romanello and Mendez. *Id.* at 286–87.[12]

The attorney for Mendez (Mr. Clark) also argued that Vertucci had been coached to give a fabricated story. Vertucci had given a flawed description of his co-defendants' "getaway car;" therefore, he could not have seen it himself; he must have been primed. *Id.* at 171–72.[13] In addition, he

---

**11.** Q [by Mr. Borg]: Now when you heard this description at an area that you knew had people coming and going, you were suspicious of that story, weren't you?

A: Yes, sir.

Q: As a matter of fact, even on December 8th, you thought Vertucci was a suspect?

A: He was a suspect, yes.

Q: And you had doubts about his story even then, didn't you?

A: Yes, sir.

Q: Because you didn't believe it, did you?

A: I had doubts.

Mr. Borg: I have nothing else.

The Court: All right.

Id. at 55, 58–59.

**12.** Borg argued:

Oh, we have heard about the description of the supposed gunmen that came to Vertucci and said, if you identify me harm will come to you.

Well, do you know the description he gave? . . . [T]hat is not the description of a person that Vertucci claims he actually saw, but had to be somebody that was told about it. [sic] He was told.

*Id.*

**13.** As Clark pointed out:

The identification of the car was all botched up. The car was dark outside with light blue inside; he had it just the opposite. Someone must have told him that, whoever he may have been working with.

*Id.*

could not have been handcuffed to the light pole as long as he claimed, because he had been yelling from the pole and would have been discovered earlier. *Id.* at 172. Clark concluded that the smugglers had taken Vertucci to the pole late at night and directed him to say that the gold was stolen. Thus, customs officials would be put off the trail. *Id.* at 174.[14] Vertucci's involvement with a smuggling operation would also explain his failure to fill out certain customs documents: "[I]f he smuggles, you want to get it through, that's it; that's all." *Id.* at 175.

In attacking the truth of Vertucci's defense, attorneys Borg and Clark aided the prosecution. They substantiated the government's contention that Vertucci had never been robbed, but had been handcuffed to the pole by colleagues. Moreover, they presented the jury with a basic conflict: either Vertucci's defense was untrue or theirs was. In other words, either Vertucci was guilty or Romanello and Mendez were guilty. In the typical case of antagonistic accusations, "a substantial possibility exists that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *United States v. Berkowitz, supra,* 662 F.2d at 1134. The same problem arose in the present case. The conflict between the two defense camps created a substantial possibility the jury would infer that neither defense was true.

This was especially the case where the very antagonism between the defendants fit neatly into the government's conspiracy theory. Vertucci had stated that he was robbed in order to further the conspiracy; and he had given an accurate description of his "assailants" in order to avoid contradicting himself during later questioning. Naturally, when he came to trial, he had to press the robbery as his only defense. Equally naturally, when Romanello and Mendez were tried, they had to deny the robbery and show that Vertucci was lying. Given the accuracy of his description, they could not just claim that someone else had robbed him. The conspiracy plan itself produced and explained the antagonism between the defenses. The government could not lose when each defendant attacked the other. The attacks merely weakened each defense and underscored the strength of the government's theory.

█ Thus, in the circumstances of this case, Vertucci suffered the very prejudice that the severance rules are designed to rectify. Although the core of his co-defendants' defense was not his own guilt, they nevertheless had to undermine Vertucci's defense to establish their own innocence. We hold that a defendant like Vertucci deserves a new, severed trial when:

1. the core of his defense is the guilt of his co-defendant;

2. to disprove his defense would establish his guilt;

3. his defense and the defense of his co-defendant are irreconcilable and mutually exclusive;

4. the co-defendant actively attacks his defense at trial; and

5. he suffers compelling prejudice as a result.

Such was the case here. A fair trial was impossible under the circumstances.

"[Whether or not] the evidence of each defendant's guilt was strong, this joint trial was intrinsically prejudicial." *United States v. Crawford, supra,* 581 F.2d at 492. On the other hand, "[b]ecause the evidence was uncomplicated and only two [defense camps] were involved, the inconvenience and expense of separate trials would not have been great." *Id.; see also United States v. Johnson, supra,* 478 F.2d at 1134. The trial court abused its discretion in fail-

---

**14.** Clark theorized how Vertucci had become involved:

> You remember Mr. Hensely said, Customs is supposed to check you out on the phone? Oh, got a problem; what are we going to do? Couple of characters we don't even know are driving crazy to New York with our gold. The agent wants to see it in the morning. Mr. Vertucci, we got an assignment for you. We are going to take you out, put you at a post and you are going to say it was stolen.
>
> *Id.*

ing to grant a severance. The convictions of all three defendants must be reversed.

## IV. CONCLUSION

Conspiracy trials, with their world-girdling potential, are given more extensive thrust by the admission of hearsay testimony, the use of conspiratorial acts to prove substantive offenses, and the joint trial of defendants. These pressures alone threaten to undermine the fair consideration of individual conspiracy defendants. However, the dangers inherent in joint trials become intolerable when the co-defendants become gladiators, ripping each other's defenses apart. In their antagonism, each lawyer becomes the government's champion against the co-defendant, and the resulting struggle leaves both defendants vulnerable to the insinuation that a conspiracy explains the conflict. We find that Vertucci, Romanello and Mendez did not receive a fair trial under these conditions. Vertucci should have been tried separately from the other two. Romanello and Mendez may still be tried together.

We REVERSE all convictions and REMAND for further proceedings in accordance with this opinion.

GEE, Circuit Judge, dissenting:

In colorful if inapposite language, the majority describes defendants as "wretches in Dante's hell," "clawing into each other with antagonistic defenses." While the defenses are to some extent antagonistic, in sober fact they are not antagonistic to the point of being irreconcilable or mutually exclusive. Since this is what our authorities require for severance, I dissent from the reversal of defendants' convictions.

In our Circuit, antagonistic defenses among defendants require severance only if the defenses are antagonistic to the point of being mutually exclusive or irreconcilable. *United States v. Berkowitz*, 662 F.2d 1127, 1133 (5th Cir.1981). The defense of a defendant reaches such a level of antagonism "if the jury, in order to believe the core testimony offered on behalf of that defendant, must necessarily disbelieve the testimo-

ny offered on behalf of his co-defendant." *Id.* at 1134.

Here no such core considerations prevented the jury from believing Vertucci's defense (that he was robbed by two unidentified men) and that of Romanello and Mendez (that they had innocently accepted a job to drive the gold to New York). Their defenses were not *of their nature* irreconcilable or mutually exclusive. Consequently, severance was not required under *Berkowitz*.

The majority, however, determines that the statements of Vertucci's counsel have effectively identified Romanello and Mendez as the persons who robbed Vertucci. Consequently, the majority finds that the core of Vertucci's defense is that he was robbed of the gold *by his co-defendants.* The majority goes beyond *Berkowitz* in *inferring* from the record that Vertucci identified Romanello and Mendez and that this constitutes the core of his defense. The core of Vertucci's defense was that he was robbed. Statements that merely imply that Romanello and Mendez perpetrated that robbery are clearly "minor or peripheral matters which are not at the core of his defense," *Berkowitz* at 1134: what matter who robbed Vertucci if he was in fact robbed? *Berkowitz* presented a similar situation: both defendants, accused of a cocaine conspiracy, attempted to minimize their own involvement and to cast the other as the more active participant. *Id.* at 1132. We held that the *core* of their defenses was noninvolvement in the criminal activity even though, as here, each implied that the other was guilty. Like these, at their core the defenses of Vertucci, Romanello and Mendez are quite consistent.

Moreover, even had the identity of Vertucci's robbers pertained to the core of his defense, as it clearly does not, the statements of Vertucci's lawyer did not so sufficiently implicate Romanello and Mendez as to require severance. It is undisputed that at no point during the trial did either Vertucci or his counsel ever directly accuse Romanello or Mendez of robbing Vertucci. The majority concludes, however, that Ver-

tucci's lawyer identified Romanello and Mendez as the robbers through insinuations in his opening statement to the jury and in testimony elicited in cross-examination of various witnesses.

We have held, however, that implied accusations of a defendant made during the opening statement of a co-defendant's counsel do not render defenses so sufficiently antagonistic as to compel severance. *United States v. Mota,* 598 F.2d 995, 1000 (5th Cir.1979), *cert. denied sub nom, Flores v. United States,* 444 U.S. 1084, 100 S.Ct. 1042, 62 L.Ed.2d 770 (1980). In *Mota,* counsel for defendant Flores noted that, as to his client, the evidence would probably show what the government contended.[1] The co-defendant Mota argued that this opening statement required severance, for if the evidence showed what the government contended as to Flores, it would also establish the guilt of Mota. We held that Mota was not prejudiced by the trial court's denial of his motion for severance because the trial judge had instructed the jury that the comments of counsel were not evidence and could not be considered as such. Similar instructions were given in this trial, both before the opening statement was made[2] and at the end of trial.[3] Since the jury was instructed not to rely on the statements of counsel as evidence, the statements are insufficient to implicate Romanello or Mendez.

The majority also suggests that Mendez and Romanello did not receive a fair trial because in cross-examination Vertucci's counsel elicited testimony that the state had indicted Romanello and Mendez for robbing and kidnapping Vertucci. This testimony was, however, balanced by testimony that the indictments against Romanello and Mendez were dismissed and hence was insufficiently prejudicial to prevent a fair trial. The jury need not have believed that Vertucci was accusing his co-defendants of robbing and kidnapping him.

The majority opinion radically expands the concept of core defense to include not only the essence of a defense (Vertucci was robbed), but also any elaboration of that defense devised by counsel's ingenuity that could possibly implicate a co-defendant (Vertucci was robbed *by Romanello and Mendez*). As this result is not compelled by precedent in this field and seems to me both unfortunate and unnecessary, I respectfully dissent.

---

1. Flores relied on the insanity defense.

