United States Court of Appeals,

Eleventh Circuit.

Nos. 93-9382, 94-8385.

UNITED STATES of America, Plaintiff-Appellee,

v.

Gary FROST, Major, George Johnson, Edward Wayne Martin, Defendants-Appellants.

UNITED STATES of America, Plaintiff-Appellee,

v.

Gary FROST, Major, Defendant-Appellant.

Aug. 25, 1995.

Appeals from the United States District Court for the Middle District of Georgia. (No. CR 93-31-MAC(WDO), Willbur D. Owens, Jr., Judge.

Before HATCHETT, Circuit Judge, HENDERSON, Senior Circuit Judge, and YOUNG*, Senior District Judge.

PER CURIAM:

In the first of these two related appeals, Defendants-Appellants Gary Frost and George Johnson appeal from their convictions and sentences; Defendant-Appellant Edward Wayne Martin appeals his sentence. In the second case, Defendant-Appellant Frost appeals from the district court's denial of his Motion for New Trial based on newly discovered evidence.

I. FACTS

The three Appellants were accused of conspiring to mail a videotape and a note to William Douglas, a member of the Warner Robins City Council, for the purpose of causing Douglas to resign

*Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

from the City Council.[1] All three Appellants were charged with Attempt to obstruct, delay and affect commerce in violation of 18 U.S.C. section 1951 (the Hobbs Act), conspiracy to commit an offense against the United States in violation of 18 U.S.C. 371 by mailing a threatening communication in violation of 18 U.S.C. section 876, and mailing a threatening communication in violation of 18 U.S.C. section 876. Johnson and Martin were also charged with making false statements before a federal grand jury in violation of 18 U.S.C. section 1623. The jury returned a verdict of guilty on all counts as to these Appellants.

The evidence at trial showed the following. Appellant Martin was elected Mayor of the town of Warner Robins, Georgia, in 1988. At the time of Martin's election, Douglas was a City Council member and had so served for twelve years; Appellant Johnson was the Police Chief of Warner Robins; and Appellant Frost was a police department Major in charge of the patrol and criminal investigative divisions. As Mayor, Martin supervised Johnson; as Police Chief, Johnson supervised Frost.

After taking office as Mayor, disputes arose between Martin and city council members as to the manner in which Warner Robins should be run.[2] Douglas drafted—and the council passed—several ordinances which reduced the Mayor's spending authority. On April

---

[1]The videotape showed Douglas, a married man, in a car with a woman who was not his wife. Douglas was meeting with the woman on federal property when, unbeknownst to Douglas, the tape was made.

[2]In addition, there was testimony that "rumors" were being circulated to the effect that Douglas was considering running for the office of mayor in the next election.

22, 1991, four months after Douglas had sponsored the ordinances, he received a package through the mail which contained a videotape and an anonymous handwritten note which stated that the videotape would be given to the Mayor and Douglas' wife unless Douglas resigned immediately from the city council. Douglas did not resign from the council, nor did he mention the tape and note to anyone.

Mark Street, an employee of the City of Warner Robins, testified that he had picked up the city mail on April 22, 1991, and delivered it to City Hall; while it was not Street's normal duty to deliver the mail, he did so because the employee who normally had mail duty was absent from work that day. Later that day, Street testified, he was called by Frost, who asked whether Douglas had received a package in the mail. When Street responded affirmatively, Frost asked Street to come to the Police Department and tell him what had happened. When Street met with Frost and related to him Douglas' reaction to the package, Street testified, Frost made a statement to the effect that Frost "bet [Douglas] was upset." Appellant Johnson was present during this conversation.

On May 1, 1991, Martin called Douglas and requested that Douglas come to his office. Upon Douglas' arrival, Martin told Douglas that he had received a videotape in the mail depicting Douglas "in a compromising situation." A city council meeting was held that evening, during which Douglas informed the other members of the council of the videotape and note he had received. The council rejected Douglas's offer to resign.

At the next city council meeting, Martin pulled Douglas aside and asked him if had received any further communication concerning

the videotape. Douglas recalled that, when he advised Martin that he had not received any further communication, Martin responded: "I'm not suggesting that you do this, but if you resign, maybe they won't send a copy to your wife."

Appellants Frost and Johnson did not dispute that the videotape had in fact been made on April 16, 1991, at the direction of Johnson and with Frost's participation, using a video camera owned by the Warner Robins Police Department. Testimony at trial established that Johnson had two copies of the videotape made on the same day the videotape was filmed; later that day, Frost and Johnson assembled in Martin's office to view one copy of the tape, which was left with Martin after the viewing.

Expert testimony showed that the copy of the tape sent to Douglas was a "first generation" copy, *i.e.,* one made directly from an original tape. The evidence reflected that, as of April 19, 1991, the day the tape was mailed to Douglas, three such copies of the tape existed. The original tape was in the possession of Johnson; the three copies consisted of a copy that Johnson had and which he later gave to his former secretary; a copy given to Wiley Bowman, the Director of Public Works for Warner Robins, who had participated in the surveillance of Douglas; and a copy given to Martin on April 16, 1991.

The evidence revealed that the only one of the three videotapes unaccounted for after April 19, 1991, and, therefore, the only one which could have been sent to Douglas on that date, was the tape which had been in the possession of Martin. In addition, a fingerprint on the back side of the anonymous note was

identified as Martin's.

Daniel Hart testified that, in early 1992, while he was a Warner Robins police officer, Hart asked Johnson whether Johnson believed a rumor that Douglas was planning to run for Mayor in the impending election. Hart testified that Johnson responded that Douglas would not be running for the office of Mayor because "[w]e have a tape, a videotape of Douglas and his girlfriend in a car...." Hart also testified that Johnson stated during the same conversation that Douglas "had been told to resign his council seat" and would not run for that position again.

The evidence further revealed that, during the investigation, Martin advised Wiley Bowman to destroy Bowman's copy of the tape and that Martin had destroyed a copy that he obtained subsequent to the mailing of the videotape to Douglas. During the ensuing investigation, Martin and Johnson appeared before the federal grand jury. Martin and Johnson were charged with and convicted of making false statements under oath when questioned concerning the matter under Counts 4 and 5, respectively.

After the convictions, the United States Probation Department prepared presentencing investigation reports which were presented to all three Appellants. In calculating the applicable guidelines, the Probation Department used the guidelines manual effective November 1, 1993, since the Appellants were to be sentenced after that date. The Probation Department used section 2B3.3 of the United States Sentencing Guidelines to determine the base offense level. Additionally, the Probation Department factored in for each Appellants a two-point upward adjustment under guidelines section

3B1.3 for abuse of a position of trust. All Appellants objected to the use of the 1993 guidelines manual and argued that the 1991 manual should be used since the crime occurred during that year. Several hours prior to the hearing, the court notified all counsel that the court considered 2B3.2, rather than 2B3.3, as the proper guideline for computing the base offense level.

After hearing all the arguments of counsel, the court agreed to apply the guidelines contained in the 1991 manual; however, over the objection of the Appellants, the court used 2B3.2 as the guideline for computing the base offense level, rather than 2B3.3, which was the section utilized by the Probation Department in its presentence reports. The district court enhanced each Appellant's offense level two points for abuse of a position of trust, sentencing Appellants Martin and Johnson to 51 months and Appellant Frost to 33 months in the custody of the Bureau of Prisons.[3]

## II. DISCUSSION

[3] On Count 1, Martin and Johnson each were sentenced to 51 months' imprisonment followed by three years of supervised release; on Count 2, 51 months' imprisonment to be served concurrently with the sentence in Count 1, followed by three years of supervised release; and on Count 3, 24 months' imprisonment to be served concurrently with the sentences on Counts 1 and 2, and on their respective perjury counts, followed by three years of supervised release. On Count 4, which charged Martin with perjury, he was sentenced to 51 months' imprisonment to be served concurrently with the sentences in Counts 1 and 2, followed by three years of supervised release; Johnson received the same sentence on Count 5, in which Johnson was charged with perjury.

On Count 1, Frost was sentenced to 33 months' imprisonment followed by three years of supervised release; on Count 2, 33 months' imprisonment to be served concurrently with the sentence in Count 1, followed by three years of supervised release; on Count 3, 24 months' imprisonment to be served concurrently with the sentence in Counts 1 and 2, followed by 3 years of supervised release.

As noted above, each Appellant appeals his sentence.[4] Appellants Frost and Johnson also raise numerous issues relating to their convictions. We find that the evidence was sufficient to support the verdicts against Appellants Frost and Johnson; we discuss certain of the issues raised concerning their convictions below.[5]

A. REFUSAL TO DISMISS THE INDICTMENT.

We address the allegations of insufficiency of the indictment only with respect to the interstate nexus/Hobbs Act issue. The other arguments as to the sufficiency of the indictment are without merit and do not warrant further discussion.

Appellants allege as reversible error the fact that the district court did not dismiss the indictment prior to trial on the basis that it fails to contain any allegation that the City of Warner Robins was engaged in interstate commerce. An indictment is sufficient if it contains the elements of the offense charged in a manner which fairly informs the defendant of the charges against which he must defend and enables the defendant to enter a plea which will bar future prosecution for the same offense. *United States v. Elkins,* 885 F.2d 775 (11th Cir.1989), *cert. denied,* 494 U.S. 1005, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990). Our review of

---

[4]As noted, Appellant Martin appeals only his sentence.

[5]After a thorough review of the record, we further find that: the district court did not abuse its discretion in refusing to disclose grand jury proceedings prior to the disclosure of material under the Jencks Act; the district court did not err in excluding written evidence of Frost's oath as a police officer; and the district court did not abuse its discretion by excluding the testimony of certain witnesses. These issues require no further discussion.

the indictment in this case leads to our conclusion that the indictment adequately charged the defendants, and the district court did not err in denying the motion to dismiss it.

B. EVIDENTIARY CHALLENGES.

1. *Jurisdiction.*

Appellants argue that the evidence was insufficient to support the Hobbs Act jurisdictional allegations contained in the indictment. Appellants were charged with an attempt to obstruct or affect commerce by extortion. "The Hobbs Act applies to extortion wherein the perpetrator "... *in any way or degree* obstructs, delays or affects commerce or the movement of any article or commodity in commerce....' " *United States v. Farrell,* 877 F.2d 870, 875 (11th Cir.1989), *cert. denied,* 493 U.S. 922, 110 S.Ct. 289, 107 L.Ed.2d 268 (1989) (quoting 18 USC section 1951(a)). Cases construing the Hobbs Act have repeatedly held that the statute's plain terms forbid interference with interstate commerce in *any* degree. *United States v. Summers,* 598 F.2d 450 (5th Cir.1979). "Only a *de minimis* nexus with interstate commerce is required." *Farrell,* 877 F.2d at 875 (citing *United States v. Jackson,* 748 F.2d 1535 (11th Cir.1984)).

> Where attempted extortion or conspiracy to extort are charged, the interstate nexus may be demonstrated by evidence of potential impact on interstate commerce or by evidence of actual, *de minimis* impact. *Id.* Potential impact is measured at the time of the attempt, *i.e.,* when the extortion demand is made, based on the assumed success of the intended scheme. *Id.* A sufficient potential impact exists when there is evidence of "a plan to embark upon a course of extortionate behavior likely to have the natural effect of obstructing commerce."

*Id.* (citations omitted).

Had the charged extortion scheme succeeded, the likely natural

effect was that interstate commerce would have been affected. The evidence was sufficient to show that the goal of the extortion was to have William Douglas resign his Warner Robins City Council seat, and that the actions of that city council, at least to a minimal degree, affect interstate commerce. The question then becomes whether Douglas' resignation would have had a potential impact on the operation of the city. We conclude that the potential impact of Douglas' resignation as a city council member was sufficient to provide the necessary jurisdictional element under the Hobbs Act. Accordingly, we hold that the jurisdiction of the trial court was valid.

2. *Expert testimony.*

Appellant Johnson asserts that the district court abused its discretion in excluding as not relevant the proffered expert testimony of a Georgia attorney who would have testified as to his opinion that the videotape was insufficient evidence to warrant prosecution of Douglas under Georgia law. Appellant Johnson asserts that this testimony would have bolstered his testimony as well as the testimony of Appellant Frost that they conducted surveillance of and videotaped Douglas as part of a legitimate criminal investigation being conducted by the Warner Robins Police Department.

The district court "has broad discretion to exclude expert testimony, and his action will be upheld unless it is manifestly erroneous." *Hibiscus Associates Ltd. v. Bd. of Trustees of Policemen and Firemen Retirement System,* 50 F.3d 908, 917 (11th Cir.1995). There was no contention by the prosecution in this case

that the police did not have a right to investigate criminal conduct; further, the jury was properly instructed that "police officers have the right to investigate anyone who is suspected of engaging in criminal behavior." Because no issue was raised as to whether Douglas' behavior was prosecutable, we find that the district court did not abuse its discretion in prohibiting the admission of this proffered expert testimony.

3. *Limiting cross-examination of witnesses.*

Appellants Johnson and Frost both assert that the district court erred by not allowing their respective defense counsel greater latitude in cross-examination and impeachment of government witnesses. Frost contends that the limitations placed upon his counsel's cross-examination of Mark Street about possible bias was an abuse of the district court's discretion; Johnson makes the same claim with respect to the cross-examination of Daniel Hart. Frost also asserts that the district court abused its discretion when it excluded as not relevant the cross-examination of William Douglas about prior misconduct with women and about the employment of his companion in the videotape. In addition, Frost maintains the district court denied him the right to impeach witness Street for bias by disallowing as not relevant during cross-examination one question of witness Sherry Schmitz concerning whether or not Mark Street had told her someone was blaming him for the blackmail incident.

The district court's discretion in limiting the scope of cross-examination is subject to the requirements of the Sixth Amendment. *United States v. Diaz,* 26 F.3d 1533, 11539 (11th

Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995). "The Confrontation Clause guarantees criminal defendants an opportunity to impeach through cross-examination the testimony of witnesses for the prosecution." *United States v. Baptista-Rodriguez,* 17 F.3d 1354, 1370 (11th Cir.1994). The defendant's right to cross-examination, however, is not without limitation; he is entitled only to an opportunity for effective cross-examination, not cross-examination that is effective "in whatever way, and to whatever extent, the defense might wish." *Id.* at 1366 (quoting *Kentucky v. Stincer,* 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987)). "A defendant's confrontation rights are satisfied when the cross-examination permitted exposes the jury to facts sufficient to evaluate the credibility of the witness and enables defense counsel to establish a record from which he can properly argue why the witness is less than reliable." *Id.* at 1371. Once there is sufficient cross-examination to satisfy the Confrontation Clause, further questioning is within the district court's discretion. *Diaz,* 26 F.3d at 1539. The trial judge has wide latitude to impose reasonable limitations on cross-examination based upon concerns such as relevancy, and those restrictions are reviewed solely for abuse of discretion. *Baptista-Rodriguez,* 17 F.3d at 1370-71.

A review of the record reflects that all prosecution witnesses were thoroughly and effectively cross-examined by all defense counsel. Appellants have not shown that the restrictions placed on defense counsel were an abuse of the district court's discretion.

4. *Improper prosecutorial remarks.*

Both Appellants Frost and Johnson contend that the district court abused its discretion in denying the motion for mistrial made after the government's attorney made the following comment to the jury during closing argument:

> What they did to William Douglas and what they would have done to others is no different than what the Gestapo did in World War II. It is no different than what authorities in Third World countries do to the people under their protection.

We review the record in its entirety to determine if the statements were improper and, if so, whether they rendered the trial fundamentally unfair. A prosecutor's argument renders a trial unfair if "there is a reasonable probability that [the remarks] changed [the] outcome of the case." *Baxter v. Thomas,* 45 F.3d 1501, 1508 n. 15 (11th Cir.1995) (quoting *Brooks v. Kemp,* 762 F.2d 1383, 1402 (11th Cir.1985) (en banc), *vacated,* 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986), *reinstated on remand,* 809 F.2d 700 (11th Cir.) (en banc) (per curiam), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 744 (1987)).

Although we think the prosecutor was ill-advised to make a reference to Nazi Germany during her closing argument, we are convinced, upon a review of that particular comment in context and the entire record, that Appellants have not shown that any of the prosecutor's remarks rendered their trial fundamentally unfair.

C. FROST'S MOTION FOR SEVERANCE.

Appellant Frost appeals the district court's denial of his motion for severance, which was made both prior to and during his trial. We may reverse a district court's denial of a motion for severance only if we find that the court abused its discretion. *United States v. Adams,* 1 F.3d 1566 (11th Cir.1993), *cert. denied,*

--- U.S. ----, 114 S.Ct. 1310, 127 L.Ed.2d 660 (1994).

Appellant Frost argues that this case presented mutually exclusive defenses. Specifically, Frost asserts, handwriting exemplars introduced into evidence by co-defendant Martin in which Frost had misspelled the word "councilman" as "counselman", the same as it had been spelled by the writer of the blackmail note, was highly prejudicial and damaging to Frost. We address the nature of this evidence in section F, the portion of this opinion discussing Frost's motion for a new trial.

Joinder of defendants is proper "if they are alleged to have participated in the same ... series of acts or transactions constituting an offense or offenses." F.R.Crim.P. 8(b). The defendant attempting to establish that the district court abused its discretion in denying a motion for severance carries a heavy burden. This Court has held:

> In conspiracy cases like this one, the general principle is well-settled that "persons who are charged together should also be tried together." In evaluating a motion for severance, this court must determine whether the prejudice inherent in a joint trial outweighs the interests in judicial economy. To establish that the district court's balancing of interests was an abuse of discretion, [the defendant] must "demonstrate that a joint trial resulted in specific and compelling prejudice to the conduct of his defense."

*Adams,* 1 F.3d at 1578 (quoting *United States v. Saget,* 991 F.2d 702, 707 (11th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 396, 126 L.Ed.2d 344 (1993)). By proving that the defenses in the case were "antagonistic to the point of being irreconcilable and mutually exclusive," a defendant can meet this burden. *United States v. Farrell,* 877 F.2d 870, 876 (11th Cir.), *cert. denied,* 493 U.S. 922, 110 S.Ct. 289, 107 L.Ed.2d 268 (1989) (quoting *United*

*States v. Romanello,* 726 F.2d 173, 177 (5th Cir.1984)). "The essence or core of the defenses must be in conflict, such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *Id.*

As noted, we have discussed in section F of this opinion the exemplars that Frost asserts prejudiced his defense, and we find that the defenses offered at trial by Frost and Martin were not mutually exclusive and antagonistic. Accordingly, we conclude that the district court did not abuse its discretion in refusing to sever.

D. JURY INSTRUCTIONS.

With respect to Appellants' contentions regarding the jury instructions in this case, we note that the trial court has broad discretion in formulating a jury charge. *Christopher v. Cutter Laboratories,* 53 F.3d 1184 (11th Cir.1995). We have reviewed the instructions as a whole and determined that the instructions fairly and adequately addressed the issues and correctly stated the law. The jury was properly instructed that "police officers have the right to investigate anyone who is suspected of engaging in criminal behavior," and that "[p]olice officers ... do not have the right to use the results of such an investigation for an illegal purpose."

E. THE *ALLEN* CHARGE.

This Circuit allows the use of *Allen* [*Allen v. U.S.,* 162 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) ] charges. *United States v. Elkins,* 885 F.2d 775 (11th Cir.1989), *cert. denied,* 494 U.S. 1005, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990). This Court's inquiry on

appeal of a district court's decision to give an *Allen* charge is limited to evaluating the coercive impact of the charge; thus, the question we address is whether, under the totality of the circumstances and language of the charge, the jury was unduly coerced into reaching a verdict. *Id.; United States v. Chigbo,* 38 F.3d 543 (11th Cir.1994).

The language the district court used in this case did not deviate from the wording used in accepted *Allen* charges, and the totality of the circumstances do not indicate coercion. We conclude that the district court's *Allen* charge did not unduly coerce the jury into reaching a verdict.

F. FROST'S MOTION FOR NEW TRIAL.

After filing the appeal of his conviction and sentence, Appellant Frost filed with the district court a motion for new trial based on newly discovered evidence. Frost cited three grounds for his motion: (1) impeachment evidence of government witness Mark Street; (2) evidence that a fourth person wrote the extortion note; and (3) perjury of co-defendant Martin in denying that he knew the identity of the author of the threatening note.

In its order, the district court noted that Frost's appeal removed the district court's general jurisdiction under Federal Rules of Criminal Procedure 33, and that it could not grant a motion for new trial absent a remand from this Court. The Court then proceeded to consider and deny the motion on its merits. The district court did not hold a hearing on the motion. Frost filed a second appeal, contending that the district court erred in denying his motion for a new trial.

While Rule 33 expressly prohibits the granting of a motion for new trial absent a remand from the appellate court, the district court acted within its jurisdictional power in denying the motion. *United States v. Hersh,* 415 F.2d 835 (5th Cir.1969).[6]

A motion for a new trial is committed to the sound discretion of the trial court and will not be overruled on appeal absent an abuse of discretion. *United States v. Garcia,* 13 F.3d 1464 (11th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 2723, 129 L.Ed.2d 847 (1994).

In order to justify the granting of a new trial based on newly discovered evidence in a criminal trial, the defendant must satisfy a five-part test: (1) the evidence must have been discovered subsequent to the trial; (2) the movant must have exercised due diligence in discovering the evidence; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material to the issues before the court; and (5) the evidence must be such that it would probably produce a new result. *United States v. DiBernardo,* 880 F.2d 1216 (11th Cir.1989). Moreover, the district court cannot grant a motion for a new trial based on newly discovered evidence once it has determined that the movant has failed to satisfy any part of the test. *United States v. Reed,* 887 F.2d 1398, 1404 (11th Cir.1989), *cert. denied,* 493 U.S. 1080, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990).

---

[6]This Court has adopted as binding precedent decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

In his motion for a new trial, Frost cited as newly discovered evidence certain employment records of the employee who normally delivered the mail to the Warner Robins City Hall, Victor Irwin. While these records, which were attached by Frost to his motion, show that Irwin did not clock into work at all on April 22, 1991, the day on which the evidence established that Street delivered the package containing the videotape and extortion note, the records also show that he was not charged any leave for that day. Frost argues that these records were sufficient to have caused the jury to acquit Frost.

Assuming without deciding that this evidence was not available to Frost and was in fact newly discovered, Frost fails to satisfy the five-pronged test. Frost's apparent argument is that the records show that Street did not pick up and deliver the mail on April 22, 1991, as he testified and, therefore, Street was not truthful in his testimony. As the district court noted, no evidence has been proffered to show that Street did not deliver the mail that day. In his own testimony, Frost stated that Street had related to him on April 22, 1991, that Street had delivered the mail because the employee who usually did so was absent. Additionally, two other witnesses called by Frost at trial testified that Street had related that he had delivered the mail on April 22, 1991. The evidence asserted by Frost as newly discovered does not contradict Street's testimony that he delivered the mail on the day in question. Even assuming that the evidence proffered by Frost in support of his motion could be viewed as impeaching, this evidence concerning the possibility that Irwin was not charged

with leave even though he had not clocked into work on that day is not material and would not have been likely to have resulted in Frost's acquittal.

Appellant Frost asserts a second ground in support of his motion for a new trial. Subsequent to the trial of this case, Frost's attorneys established that Curtis McCollum, a Warner Robins minister, had written the blackmail note involved in this case. McCollum entered a guilty plea to the offense of misprision of a felony and stated under oath that he had written the note at the urging of Appellant Martin. Appellant Frost asserts that, at trial, significant emphasis was placed on the fact that in the blackmail note, the word "council" had been misspelled as "counsel" and that the evidence established that Frost was the only person of the all those whose handwriting exemplars had been taken who had misspelled that word. Because it was later conclusively established that McCollum had written the note, Frost argues, he is entitled to a new trial.

We agree with the district court that the evidence that McCollum wrote the note does not entitle Frost to a new trial. There was no evidence presented or argument made by the government connecting Frost to the actual writing of the note. The government's handwriting expert stated that he could not render an opinion as to who had written the note, and Frost's own handwriting expert testified that Frost had not written the note. The exemplars were offered by Martin's attorney and admitted without objection by Frost; no mention of Frost's misspelling of the word "council" was made to the jury. We find that this evidence was not

material to Frost's guilt, and was not likely to result in Frost's acquittal.

Frost's final argument in support of his motion was that he was prejudiced by and entitled to a new trial because of the perjury of co-defendant Martin. Frost asserts that, if Martin had testified truthfully that he had caused the note to be written and mailed, Frost would have been acquitted.

As the district court noted in its order denying Frost's motion, Frost presumes in making both his second and third arguments for a new trial that he "was convicted based solely on an assumption that he wrote the extortion note." The government neither attempted or needed to prove authorship of the note to carry its burden of proof; in fact, the government introduced evidence that it was impossible to tell who wrote the note. The testimony of Mark Street was sufficient evidence from which the jury could conclude beyond a reasonable doubt that Frost knowingly participated in the scheme to obtain damaging evidence on Douglas and use it in an extortionate manner, regardless of the fact that Martin may have acted alone in causing the note to be written and mailed. Accordingly, we find that this evidence was not material and would not have resulted in an acquittal of Frost.

For the reasons discussed, we find that the district court did not abuse its discretion in denying Frost's motion for a new trial.[7]

---

[7]Frost and the government fully briefed the motion for new trial to the court, and the district court had available the entire record from the jury trial. The record of the trial fully supported the district court's findings as to each ground of the motion for new trial. Accordingly, we find that the district

G. SENTENCING.

Appellants also challenge their sentences on two grounds. In sentencing guidelines cases, we review the district court's findings of fact for clear error and its application of the law to those facts *de novo*. *United States v. Williams,* 51 F.3d 1004 (11th Cir.1995).

(1). In the first of these challenges, Appellants maintain that the district court erred in utilizing section 2B3.2 of the United States Sentencing Guidelines ("Extortion by Force or Threat of Injury or Serious Bodily Harm"), rather than section 2B3.3 ("Blackmail and Similar Forms of Extortion"), in establishing the base offense level for each Appellant's convictions.

For the following reasons, we agree with the Appellants that section 2B3.3, rather than 2B3.2, is applicable to establish the base offense level in this case.

First, in Counts 2 and 3, Appellants were convicted under 18 U.S.C. 876 for mailing a written communication containing a "threat to injure the reputation of William Douglas." This conduct is contemplated by the fourth paragraph of section 876, which provides a maximum penalty of two years' incarceration for one who causes a communication to be delivered containing a threat "to injure the property or reputation of the addressee." This penalty is less severe—and therefore inconsistent with—the *minimum* penalty of 27 months' incarceration provided for under section 2B3.2 of the sentencing guidelines.

---

court did not abuse its discretion in denying the motion without a hearing.

Second, we observe that Application Note 2 for section 2B3.2 provides as follows:

> This guideline applies if there was any threat, express or implied, that reasonably could be interpreted as one to injure a person or physically damage property, or any comparably serious threat, such as to drive an enterprise out of business. Even if the threat does not in itself imply violence, the possibility of violence or serious adverse consequences may be inferred from the circumstances of the threat or the reputation of the person making it. An ambiguous threat, such as "pay up or else," or a threat to cause labor problems, ordinarily should be treated under this section.

The threatened conduct in this case was non-violent; no physical threat was made, and any economic threat flowing from the potential damage to the reputation of Douglas was not so severe as to threaten the existence of Douglas or the city council. On the other hand, the Application Note to section 2B3.3 provides that 2B3.3 applies "to blackmail and similar forms of extortion where there is clearly no threat of violence to person or property." Because the instant case involved blackmail with no threat of violence, we find that section 2B3.3 is properly applied to the type of conduct involved herein.

(2). Appellants each challenge the district court's upward adjustment of their offense levels by two points for abuse of a position of trust. Sentencing guidelines section 3B1.3, entitled "Abuse of Position of Trust or Use of Special Skill," provides:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.

Application Note 1 to section 3B1.3 provides:

> The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been

afforded to other persons. This adjustment, for example, would not apply to embezzlement by an ordinary bank teller.

In this case, all three Appellants facilitated the commission of the crimes when they conspired with each other, using knowledge and resources available as a result of their positions as police officers and as Mayor, to commit and attempt to conceal the crimes of which they were convicted. The results of the surveillance were used in an illegal manner in an attempt to gain political advantage and thereby influence the manner in which the City of Warner Robins was run. Clearly, this constituted an abuse of the public trust. Under these facts, we hold that the district court's imposition of the two-point enhancement was not clearly erroneous.

## III. CONCLUSION

Any issues not addressed herein have been found to be without merit. For the reasons expressed, we AFFIRM the convictions of Appellants Frost and Johnson and AFFIRM the denial of Appellant Frost's Motion for New Trial; We REVERSE the sentences of Appellants Frost, Johnson and Martin and REMAND to the district court for resentencing consistent with this opinion.